SEALED BY ORDER OF THE COURT

FILED
APR 15 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

SVK

CV 19 2029


FAXED

MICHAEL J. MCCUE (SBN: 296425)
Email: MMcCue@LRRC.com
AARON D. JOHNSON (SBN: 261747)
Email: ADJohnson@LRRC.com
4300 Bohannon Drive, Suite 230
Menlo Park, California 94025
(650) 391-1380 (Tel.)
(650) 391-1395 (Fax)

*Attorneys for Plaintiff
NNG, Kft.*

Lewis Roca
ROTHGERBER CHRISTIE
4300 Bohannon Drive, Suite 230
Menlo Park, California 94025

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NNG, Kft., a Hungarian corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Giles D. Shrimpton, an individual<br><br>　　　　　Defendant. | **COMPLAINT** |

For its complaint against Defendant Giles Derek Shrimpton ("Shrimpton" or "Defendant"), Plaintiff NNG, Kft. ("NNG" or "Plaintiff") alleges as follows:

## JURISDICTION

1. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action alleges violations of federal statutes, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391 because, upon information and belief, a substantial part of property that is the subject of the action (namely, the trade secrets misappropriated by Defendant) are controlled, stored or hosted in this judicial district by Apple Inc. ("Apple") through its iCloud service.

-1-
COMPLAINT

3. This action should be assigned to the San Jose Division because Cupertino is where a substantial part of the property that is the subject of the action is situated.

4. The Court has personal jurisdiction over Defendant pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, because: (a) he has no local presence in the United States and therefore is not subject to jurisdiction in any state's courts of general jurisdiction; (b) he has directed his activities towards the United States as a whole by storing the misappropriated trade secrets using a cloud storage service provided by U.S. company on servers based in the United States; and (c) the exercise of jurisdiction over Defendant is consistent with the United States Constitution

## THE PARTIES

5. Plaintiff NNG is a corporation organized under the laws of Hungary, with its principal place of business at Szepvolgyi ut 35-37, Budapest, Hungary.

6. Upon information and belief, Defendant Shrimpton is a resident of the Netherlands.

## FACTUAL BACKGROUND AND NATURE OF ACTION

5. NNG is a world leader in the development of navigation and infotainment software for automotive, wireless, and personal navigation systems. NNG software has been shipped in more than 20 million devices globally. NNG has licensed its software to more than 150 hardware manufacturers worldwide. NNG's software has been licensed to the top automotive manufacturers in the world, including Chrysler, Ferrari, Fiat, Ford, Honda, Kia, Mazda, McLaren, Nissan, Porsche, Subaru, Toyota, Volkswagen, and Volvo. NNG's flagship product is the award-winning "iGo Primo" navigation software.

6. NNG operates a global business with offices in Asia, Israel, Europe and the United States. NNG employs more than 800 individuals.

7. NNG's core assets are its confidential and proprietary software, technology and knowhow, as well as its business relationships with OEMs, automobile makers, and others, which it has developed over its 15 year history.

8. NNG has developed a substantial amount of confidential and proprietary information including, without limitation software, technology, knowhow, pricing strategies, marketing strategies, customers lists and contacts, and the like (collectively, "Confidential Information").

9. NNG has used reasonable measures to protect its Confidential Information, including by restricting access to such information to employees on a need to know basis, using physical security to restrict access to its offices, using software to restrict access to NNG's computer systems and data to authorized individuals, and utilizing company-wide policies and employment agreements restricting disclosure and use of such Confidential Information.

10. NNG's Confidential Information has independent economic value because it is not generally known to and not readily ascertainable by others through proper means.

11. On or about June 16, 2016, NNG hired Defendant Shrimpton to act as its Chief Executive Officer.

12. In connection with his employment, Shrimpton agreed to, among other things, maintain all information and data related to NNG and the activities of NNG which he learned through his employment as trade secrets of NNG, including, but was not limited to, technology, products, business and financial information, which are within the scope of the Confidential Information as defined above. Shrimpton further agreed that during and after his employment with NNG, he would not disclose such information to any unauthorized third parties.

13. On Friday, April 5, 2019, NNG asked Shrimpton to tender his resignation.

14. On Sunday, April 7, 2019, without NNG's knowledge or consent, Shrimpton spent approximately 3.5 hours forwarding emails and attachments from his email account at NNG to his personal email account hosted by Apple's iCloud service. During that time period, Shrimpton sent approximately 268 emails including nearly 200 attachments, such as slide decks and Excel spreadsheets, to his iCloud email address. These emails and attachments contained a broad range of NNG's Confidential Information, including, for example: (a) NNG's business

information regarding customers, including proposals, projects and strategies; (b) NNG's business model for its user experience ("UX") products; (c) NNG's long term business plans; (d) internal management presentations; (e) NNG's financial information, including sales, budgets, costs and forecasts; (f) licensing strategies and terms; (g) patent-related information; (h) employee information, including compensation; (i) privileged information, including that involving potential litigation; (j) product-related information concerning quality processes and customer claims; and (k) information relating to the planned M&A of the company itself, including company valuation and, transaction proposals (third-party business secrets).

15. On Monday and Tuesday, April 8 and 9, 2019, NNG and Shrimpton completed the legal paperwork for his departure. His last day at NNG was April 9, 2019.

16. On April 11, 2019, NNG learned of Shrimpton's Sunday afternoon mass emailing of NNG's Confidential Information, including documents, to Shrimpton's personal iCould email address.

17. NNG immediately contacted legal counsel in the United States to seek emergency relief to prevent Shrimpton from assessing, disclosing or using the Confidential Information. Disclosure or use of such Confidential Information is likely to cause NNG to suffer irreparable injury. The information can be used by Shrimpton himself or improperly disclosed to NNG's competitors enabling them to gain a competitive advantage over NNG.

## FIRST CAUSE OF ACTION
(Defend Trade Secrets Act, 18 U.S.C. § 1836(b))

18. NNG incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

19. NNG is the lawful owner of the Confidential Information that Defendant downloaded and sent to his personal email address and stored on the iCloud service.

20. NNG has taken reasonable measures to maintain the secrecy of such Confidential Information.

21. NNG's Confidential Information derives independent economic value from not

being generally known to and not being readily ascertainable by others.

22. Defendant misappropriated NNG's trade secrets for his own use and economic gain by unlawfully emailing Confidential Information to his personal email account.

23. Defendant, with an intent to convert trade secrets related to a service used in interstate and international commerce and knowing that such conversion would inure to Defendant's economic benefit and harm NNG, knowingly:

   a. Stole, or without authorization, removed, concealed, or by fraud, artifice or deception obtained such information;

   b. Without authorization copied, duplicated, downloaded, altered, transmitted, communicated, or conveyed such information; and

   c. Received or possessed such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.

24. Defendant's actions in sending the trade secrets to his Apple iCloud account is an action in furtherance of the aforementioned offenses that occurred in the United States, subjecting him to liability under the Federal Trade Secret Misappropriation Act.

25. As a result of Defendant's unlawful misappropriation, NNG has suffered irreparable injury and damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
(California Uniform Trade Secrets Act,
Cal. Civ. Code § 3426 *et seq.*)

26. NNG incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

27. NNG is the lawful owner of the Confidential Information that Defendant downloaded and sent to his personal email address and stored on the iCloud service.

28. NNG has taken reasonable measures to maintain the secrecy of such Confidential Information.

29. NNG's Confidential Information derives independent economic value, from not

being generally known to, and not being readily ascertainable to, others.

30. Defendant misappropriated NNG's trade secrets for his own use and economic gain by unlawfully emailing the Confidential Information to his personal email account.

31. As a result of Defendant's unlawful misappropriation, NNG has suffered irreparable injury and damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Equitable relief in the form of a temporary restraining order and preliminary and permanent injunction prohibiting the illicit conduct described herein and prohibiting access to the Confidential Information;

B. Entry of an award for actual damages, statutory damages, punitive or treble damages, and such other relief as provided by U.S. federal law and California law;

C. Pre-judgment and post-judgment interest on such monetary relief;

D. The costs of bringing this suit, including reasonable attorneys' fees; and

E. For such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 12, 2019

By: _/s/ Michael J. McCue_

MICHAEL J. MCCUE (SBN: 296425)
Email: MMcCue@LRRC.com
AARON D. JOHNSON (SBN: 261747)
Email: ADJohnson@LRRC.com
4300 Bohannon Drive, Suite 230
Menlo Park, California 94025
(650) 391-1380 (Tel.)
(650) 391-1395 (Fax)

*Attorneys for Plaintiff*
*NNG, Kft.*